IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BROOKS V. PAULI


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CLINTON BROOKS, JR., APPELLANT,

V.

ASHLEY M. PAULI, APPELLEE.


Filed June 19, 2018.    No. A-17-716.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Clinton Brooks, Jr., pro se.

Linsey A. Camplin, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellee.


MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Clinton Brooks, Jr. (Brooks Jr.) has appealed the dismissal of his lawsuit alleging libel, slander, and intentional infliction of emotional distress (IIED) against Ashley M. Pauli (Pauli) and seeking $100,000 in damages.

## STATEMENT OF FACTS

The background of this case began when Pauli, on behalf of her minor sister, filed a petition to obtain a harassment protection order against Brooks Jr.'s son, Clinton Brooks III (Brooks III). The affidavit in support of the petition to obtain the harassment protection order included a statement that Brooks III was using his father, Brooks Jr., as his legal counsel. The affidavit also set forth that Brooks Jr. had just been released from prison for impersonating a lawyer.

- 1 -

Although the harassment protection order was dismissed, Brooks Jr. felt that an allegation in Pauli's affidavit directed at him was tortious. In response, he filed a lawsuit against Pauli alleging libel, slander, and IIED, for stating in her affidavit that he had just been released from prison for impersonating a lawyer and prayed for $100,000 in damages. Both parties moved for summary judgment. Following a hearing, the district court granted Pauli's motion and denied Brooks Jr.'s motion. Specifically, the district court found that the slander claim must fail because the statement was not spoken. As to the libel claim, the court noted that Brooks Jr. had actually been imprisoned for the unauthorized practice of law, but noted that the statement was privileged as it was made as part of judicial proceedings. Finally, the court dismissed the IIED claim for lack of evidence. Brooks Jr., acting pro se, has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Brooks Jr. has identified six assignments of error which can be consolidated into the following issue: whether the district court erred in granting summary judgment in favor of Pauli. His argument centers on his disagreement with the district court's finding that Pauli's statement in her affidavit was privileged. He also argues that his conviction for the unauthorized practice of law is distinguishable from Pauli's allegation that he impersonated a lawyer.

## STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Heritage Bank v. Gabel*, 298 Neb. 961, 906 N.W.2d 640 (2018).

Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Thompson v. Johnson*, 299 Neb. 819, 910 N.W.2d 800 (2018).

## ANALYSIS

### SLANDER

Brooks Jr. argues that Pauli's written statement that Brooks III was "using his father who was just released from prison for impersonating a lawyer as his legal 'counsel'" was slanderous and untrue. The district court granted summary judgment and dismissed this claim because the alleged statement was written and not spoken.

A claim of defamation requires (1) a false and defaming statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Norris v. Hathaway*, 5 Neb. App. 544, 561 N.W.2d 583 (1997). In the case of slander, the publication takes place when the words are spoken and understood by a third person to pertain to the person slandered. *Lathrop v. McBride*, 209 Neb. 351, 307 N.W.2d 804 (1981). Because the allegation here is that the statement was written, not

spoken, the district court correctly ruled that this matter does not involve a matter of a published spoken statement and properly dismissed Brooks Jr.'s claim for slander.

LIBEL

The district court found that Pauli's written statement was not libelous as a matter of law because the statement was "privileged" in that it was made as part of a judicial proceeding. Brooks Jr. acknowledges that the doctrine of absolute privilege bars a claim for libel, but argues that Pauli was not entitled to absolute privilege from his claim for libel because the statement she wrote in her affidavit for the protection order had no relevance in the case against Brooks Jr.'s son, Brooks III.

The doctrine of absolute privilege bars claims for libel or slander involving statements made in judicial proceedings as well as in quasi-judicial proceedings where the matter has some relation to the proceeding. *McKinney v. Okoye*, 282 Neb. 880, 806 N.W.2d 571 (2011). See *Beckenhauer v. Predoehl*, 215 Neb. 347, 349, 338 N.W.2d 618, 620 (1983) ("[i]t is a well-established rule that libelous matter in a pleading which is relevant to, or has some reasonable relation to, the judicial proceeding in which it is filed is absolutely privileged"). Allegations contained in pleadings are privileged if the allegations are material or pertinent to the controversy in litigation. *Beckenhauer v. Predoehl, supra*. "Where the question of the relevancy and pertinency of matters in pleadings is to be inquired into, all doubt should be resolved in favor of relevancy and pertinency." *Id*. at 350, 338 N.W.2d at 620, quoting *Simon v. London Guarantee & Accident Co.,* 104 Neb. 524, 177 N.W. 824 (1920).

> The absolute privilege attaches to defamatory statements made incident to and in the course of a judicial proceeding if the defamatory matter has some relation to the proceeding. It is not necessary that the defamatory matter be relevant or pertinent to any issue before the court. It is necessary only that it have some relevance to the judicial function which is being performed.

*Beckenhauer v. Predoehl*, 215 Neb. at 350, 338 N.W.2d at 620-21. "[T]he defamatory matter need not be relevant to any issue before the court, but is privileged if it has some reference to the judicial function the judge is performing. If the defamatory matter has some reference to the subject matter of the litigation, it is privileged." *Id.* at 351, 338 N.W.2d at 621. Whether allegations in a pleading are privileged is a question of law. *Beckenhauer v. Predoehl, supra*.

The alleged defamatory statement made by Pauli was made in a petition and affidavit to obtain a harassment protection order on behalf of her minor sister against Brooks III. The affidavit set forth the following:

> [Pauli's minor sister] withheld visitation of [her and Brooks III's] daughter like our lawyer suggested due to [Brooks III's] threatening to not give [the child] back until custody was established. On [the minor sister's] phone alone between 2 pm-4 pm she [received] 33 calls, 5 [texts] and a [Facebook] message. We called LPD out who told [Brooks III] no more contact. . . .
>
> [Pauli's minor sister] received a phone call from our other sister Madie stating Mr. Brooks had sent him [sic] nude photos of [the minor sister] from when they were together

- 3 -

and she was 17. When confronted by LPD, he stated he didn't sent them - there's documentation and proof. (Lawyer has that case #.) . . .

Mr. Brooks texted [the minor sister] while she was in school stating she gave a false statement to the police and he was going to report her. (About us working with Linsey Camplin on getting custody of their daughter.) He also proceeded to send her voice memos of him talking to his "lawyer" about establishing custody and taking full custody intimidating [the minor sister]. [The minor sister's] lawyer verified that [Brooks III] didn't file like he threatened . . . and [Brooks III] is using his father [Brooks Jr.] who was just released from prison for impersonating a lawyer as his legal "counsel" or to help him file.

Pauli's statements about Brooks Jr. were made in relation to numerous acts alleged by Pauli that were designed to intimidate and threaten her minor sister. The specific statement relates to use of a lawyer to obtain custody of the minor sister's child which she claimed to be a false threat. Pauli's statements had some reference to the judicial function that the judge was being asked to perform, that is, reviewing allegations of threats by Brooks III, some of which were allegedly done with the help of Brooks Jr. They were made in the context of Pauli's request for a harassment protection order. Since the petition and affidavit to obtain a harassment protection order was incident to, and in the course of, a judicial proceeding, and because the allegation against Brooks Jr. had some relation to that proceeding, Pauli's statement was privileged and the district court did not err in so holding.

IIED

Finally, regarding his claim of IIED, Brooks Jr.'s sole assignment is that Pauli's reference of him in the petition and affidavit for the protection order was done with malicious intent; however, the district court found that Brooks Jr. had provided no evidence to support his claim for IIED.

To recover for intentional infliction of emotional distress, a plaintiff must prove (1) intentional or reckless conduct, (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006). Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case. *Id*. "The facts must be such that when heard, an average member of the community would resent the actor and exclaim '"Outrageous!"'" *Id*. at 762, 716 N.W.2d at 432, quoting *Heitzman v. Thompson,* 270 Neb. 600, 705 N.W.2d 426 (2005).

Pauli filed a motion for summary judgment and, in support, Pauli introduced into evidence Brooks Jr.'s responses to discovery requests. Having made a prima facie case that Brooks Jr. could not prevail on his claim for summary judgment, the burden shifted to Brooks Jr. to produce admissible contradictory evidence showing the existence of a material issue of fact that prevented judgment as a matter of law. *Thompson v. Johnson*, 299 Neb. 819, 910 N.W.2d 800 (2018). Brooks Jr. produced no such evidence of conduct so outrageous to go beyond the bounds of

decency or emotional distress so severe that no reasonable person should be expected to endure it. Brooks Jr.'s sole argument on appeal is that Pauli's affidavit was done with malicious intent. The court correctly denied Brooks Jr.'s motion for summary judgment and properly granted Pauli's motion for summary judgment.

## CONCLUSION

In sum, the pleadings and admitted evidence show that there is no genuine issue as to any material facts in this case and that Pauli was entitled to summary judgment as a matter of law, which was properly granted by the district court.

AFFIRMED.