NEAL F. NORRIS, APPELLANT, V.
MARY JANE HATHAWAY, APPELLEE.
561 N.W.2d 583

Filed March 11, 1997.    No. A-95-1177.

David Riley for appellant.

Judy K. Hoffman for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

IRWIN, Judge.

## INTRODUCTION

Neal F. Norris appeals the judgment of the district court for Douglas County dismissing his petition with prejudice following a bench trial. Regarding Norris' action for defamation, the district court generally concluded that Mary Jane Hathaway's statements were not defamatory per se and that Norris had failed to prove his damages by a preponderance of the evidence. For the reasons stated below, we reverse, and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

The facts in the case before us are largely undisputed. Hathaway and Norris were both employed by the U.S. Postal Service. They worked at the Omaha plant during the same shift. In 1993, Norris was employed as a review clerk. His duties included verifying problems in various operations. Hathaway was assigned to work at a "flat sorter" machine on the first floor of the plant, and she was also a relief expediter for the first floor.

On January 19, 1993, at approximately 7 p.m., Norris was contacted by another postal employee, Dennis Wynn, to verify the labels being used on the flat sorter. Hathaway was responsible for proper labeling on that flat sorter. Norris verified that an improper color code was being used on the labels. Norris informed Hathaway's supervisor of the problem, who then spoke with Hathaway.

During a break that evening, Norris overheard Charles Prestito, who was Hathaway's boyfriend and also a postal employee, speaking to Wynn in a threatening manner. Norris reported this conduct to Prestito's supervisor and the manager of operations. On January 20 at approximately 3 p.m., Prestito was suspended from work.

On January 20, Hathaway complained to John Wacha regarding Norris. Wacha was Norris' supervisor and had authority to discipline him. In the postal service, discipline for sexual harassment can include removal from employment. According to Wacha, Hathaway was very emotional and enraged and was speaking in a shrill and loud voice. She accused Norris of sex-

ually harassing her and grabbing her by the buttocks. She did not provide an exact time or place for the incident.

Wacha conducted an investigation of Hathaway's allegations as required. He spoke with Norris on January 21, and Norris denied Hathaway's accusations. At some point, Wacha determined Hathaway's allegations to be false.

On January 21, Hathaway sent a letter to Mike Matuzek, the plant manager, in which she alleged that Norris had fondled her and that he had sexually abused her. Hathaway testified that she also told some of her coworkers that Norris had grabbed her bottom and had hit her bottom with a clipboard.

On approximately February 8, Hathaway again complained to Wacha about Norris. She alleged that Norris and Wynn had sexually harassed her, that they were laughing and sneering at her, and that Norris had previously "grabbed" her "on the butt." She characterized their conduct as harassment. After an investigation, Wacha again found her allegations to be untrue.

Hathaway also complained to the equal employment opportunity office of the U.S. Postal Service regarding Norris. In March 1993, she filed a formal complaint with the office against him.

In July and August 1993, Norris' counsel sent Hathaway two retraction demand letters on Norris' behalf pursuant to Neb. Rev. Stat. § 25-840.01 (Reissue 1995). On October 1, 1993, Norris filed a petition stating causes of action for defamation and false light. In an amended answer, Hathaway alleged truth as an affirmative defense.

A bench trial was held September 26, 1995. In addition to the evidence recited above, Norris testified at trial that he had never been disciplined or reassigned due to Hathaway's allegations and that he was currently receiving the same rate of pay as before her allegations. However, he indicated that during the investigation, which lasted 2 years, he was concerned he would be fired. Norris also felt that his reputation and name had been hurt by Hathaway's allegations. He further testified that his costs of litigation were approximately $10,000 to $12,000.

After hearing the evidence, the district court found that Hathaway's statements were not "slander per se." The court expressly stated that it was not making a finding as to the truth

or falsity of Hathaway's statements. The court dismissed Norris' petition with prejudice for failure to prove his damages by a preponderance of the evidence.

Norris thereafter filed a motion for new trial and a motion to vacate. Both motions were overruled. Norris timely filed the present appeal.

## ASSIGNMENTS OF ERROR

For his assigned errors, Norris claims that the district court erred as follows: (1) in finding that Hathaway's statements were not defamatory per se, (2) in requiring him to prove damages by a preponderance of the evidence as an element of the action, (3) in finding that he had failed to prove his case and damages, (4) in denying his posttrial motions to vacate and for new trial, (5) in declining to make any finding as to the truth or falsity of Hathaway's statements, and (6) in failing to make any finding on his action for false light.

We note that Norris does not discuss his sixth assigned error. An appellate court will not consider assignments of error which are not discussed in the brief. *Farmers & Merchants Bank v. Grams*, 250 Neb. 191, 548 N.W.2d 764 (1996).

## STANDARD OF REVIEW

■ Whether a communication is defamatory per se is a threshold question of law for the court. *K Corporation v. Stewart*, 247 Neb. 290, 526 N.W.2d 429 (1995); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993), *cert. denied* 511 U.S. 1084, 114 S. Ct. 1835, 128 L. Ed. 2d 463 (1994).

■ When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996); *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

## ANALYSIS

■ A claim of defamation requires:

(1) a false and defamatory statement concerning the plaintiff;

(2) an unprivileged publication to a third party;

(3) fault amounting to at least negligence on the part of the publisher; and

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

50 Am. Jur. 2d *Libel and Slander* § 21 (1995). Accord Restatement (Second) of Torts § 558 (1977). There are two types of defamation: Words may be actionable per se, that is, in themselves, or they may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. *K Corporation, supra.* See *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991).

We address whether the district court erred in determining that Hathaway's statements were not defamatory per se. We note that the substance of Hathaway's statements is generally undisputed. She stated to Norris' supervisors and coworkers orally and in writing that Norris had sexually harassed her, sexually abused her, fondled her, grabbed her buttocks, and hit her buttocks with a clipboard.

In *Matheson*, the Nebraska Supreme Court held:

Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one . . . . In determining whether a communication is libelous or slanderous per se, the court must construe the questioned language "in its ordinary and popular sense." . . . Further, the circumstances under which the publication of an allegedly defamatory communication was made, the character of the audience and its relationship to the subject of the publication, and the effect the publication may reasonably have had upon such audience must be taken into consideration.

239 Neb. at 553, 477 N.W.2d at 160-61.

In *Hruby v. Kalina*, 228 Neb. 713, 715, 424 N.W.2d 130, 132 (1988), the court cited the Restatement (Second) of Torts § 571 (1977), stating that " 'imputation of a crime presents slander per se if the crime, in the place of publication, would be "(a)

punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." ' " Accord *Hennis v. O'Connor*, 223 Neb. 112, 388 N.W.2d 470 (1986).

■ In the case before us, Hathaway's statement that Norris grabbed her buttocks clearly imputes to Norris the crime of third degree sexual assault. See, Neb. Rev. Stat. § 28-320 (Reissue 1989) (defining third degree sexual assault as sexual contact by force, threat of force, coercion, or deception that does not cause serious personal injury to victim); Neb. Rev. Stat. § 28-318(5) (Reissue 1989) (defining sexual contact as intentional touching of victim's sexual or intimate parts or victim's clothing covering same for purpose of sexual arousal or gratification of either party); § 28-318(2) (defining intimate parts to include buttocks). The crime of third degree sexual assault, a Class I misdemeanor, is punishable by imprisonment. Neb. Rev. Stat. § 28-106 (Reissue 1995). It is also a crime of moral turpitude. See 58 C.J.S. *Morals* 1205-06 (1948).

A similar result was reached in *Goldstein v. Kinney Shoe Corp.*, 931 F. Supp. 595 (N.D. Ill. 1996). In *Goldstein*, the federal district court held that allegations in a complaint that two males had forced a woman to engage in sexual acts, exposed themselves to the woman, and touched and grabbed her breasts and buttocks without consent, and that one of the men had molested underage girls sufficiently pled an action of defamation per se in that the statements imputed that the defendants had committed crimes.

We conclude that Hathaway's statement that Norris grabbed Hathaway's buttocks imputes to Norris a crime of moral turpitude punishable by imprisonment. We note that Hathaway made this statement in the workplace on more than one occasion to Norris' supervisors, who had the authority to terminate his employment, and also to other coworkers. For the reasons stated above, we conclude that the district court erred as a matter of law in concluding that Hathaway's statements, which are undisputed, are not defamatory per se if found to be false. See *Matheson, supra.* The district court also abused its discretion in failing to grant Norris' motion for new trial and motion to vacate on this basis. See, *Farmers & Merchants Bank v. Grams,*

250 Neb. 191, 548 N.W.2d 764 (1996) (holding that decision regarding motion for new trial will be upheld absent abuse of discretion); *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995) (holding that decision on motion to vacate will not be reversed absent abuse of discretion).

The district court by its own comments at dismissal specifically stated that it was making no finding as to the truth or falsity of Hathaway's statements. Therefore, the case is remanded to the district court for a determination of whether Hathaway's statements were true or false. If they are found to be false, the question of damages must be considered anew in light of the case law regarding damages for false statements which are defamatory per se. See *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990).

Given our disposition of Norris' first assigned error, we need not address the remaining assigned errors.

We reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.